THIRD NATIONAL BANK OF LOUISVILLE *v.* VICKSBURG BANK.

BANK.  *Collection.  Sub-agent's default.*

　A bank is not liable for the default of a prudently chosen correspondent at the acceptor's residence to whom it sends a draft received for collection. *Tiernan* v. *Commercial Bank*, 7 How. 648, followed. CAMPBELL, J., dissented.

APPEAL from the Circuit Court of Warren County.

HON. WARREN COWAN, Judge.

Lapp, Goldsmith & Co., sold to the appellant a draft by them on M. P. Durden, of Coffeeville, Miss., accepted by him, payable December 1, 1880. The appellant sent it for collection to the appellee, which sent it to Lake Brothers, bankers, at Grenada, and they forwarded it for collection to John Collins, a resident of Coffeeville. The acceptance was not paid at maturity, and Collins neglected to have it protested, whereby the drawers, who indorsed it to the appellant, were released. Failing to obtain payment from Durden, the appellant brought this suit. It was tried by consent before the judge, who decided in favor of the appellee.

*T. C. Catchings*, for the appellant.

1. All the authorities agree that a bank with which paper is left for collection is liable for loss occasioned by the negligence of its immediate agents. But they conflict irreconcilably as to the liability of a bank for the negligence of its correspondents where it is required to send paper for collection to another city or State. The leading case upon the question is *Allen* v. *Merchants' Bank*, 22 Wend. 215. By a divided court, it was held that, in such a case, a bank is liable for its correspondent's default. A dissenting opinion of Chancellor Walworth is met and overthrown by the opinion of the majority of the court. The two opinions contain most of the arguments which can be advanced in support of either view. The doctrine announced in the case cited, has been repeatedly followed in New York. *Bank of Orleans* v. *Smith*, 3 Hill (N. Y.) 560; *Montgomery County Bank* v. *Albany City Bank*, 7 N. Y. 459; *Ayrault* v. *Pacific Bank*, 47 N. Y. 570. The doctrine affirmed in these cases has been adopted in several other courts. *Titus* v. *Mechanics' National Bank*, 35 N. J. L. 588; *Reeves* v. *State Bank of Ohio*, 8 Ohio St. 465; *Hyde* v. *First National Bank*, 7 Biss. 156; *Young* v. *Noble*, 2 Disney 485; *Taber* v. *Perrot*, 2 Gall. 465; *Van Wart* v. *Woolley*, 3 B. & C. 439; *Mackersy* v. *Ramsays*, 9 Cl. & Fin. 818; *American Express Co.* v. *Haire*, 21 Ind. 4. The rule laid down in these cases, has been often applied to attorneys and mercantile agencies. If an attorney takes a note for collection and sends it to another attorney, who by negligence or misconduct causes the loss of the debt, he is undoubtedly liable. This has been held in Mississippi, *Wilkinson* v. *Griswold*, 12 S. & M. 669; in other States, *Lewis* v. *Peck*, 10 Ala. 142; *Cummins* v. *Heald*, 24 Kansas 600. An agency taking paper for collection is responsible for the mistakes, negligence, and misconduct of attorneys or agents engaged by it to make collection. *Bradstreet* v. *Everson*, 72 Penn. St. 124; *Morgan* v. *Tener*, 83 Penn. St. 305. There can be no difference in principle between collections to be made by attorneys or collection agencies and banks. In their case, as with banks, the person dealing with them knows that it is impossible for them to make collection personally, and that

8

they will be compelled to transmit the paper to others for attention. The consideration is likewise the same. Edwards on Bailments 112; Story on Bailments, § 171 c. No reason exists why the rule applied to such agencies is inapplicable to banks. *Allen* v. *Merchants' Bank,* 34 Am. Dec. 289, 316 and notes. The doctrine is explicitly announced by the Supreme Court of the United States. *Hoover* v. *Wise,* 91 U. S. 308. A banker or collector is not the agent of a person depositing paper with him for collection. The relation of master and servant does not exist between them. The banker is at liberty to choose his own method of collecting, and he must answer to his customers for the negligence of his employes. Shear. & Redf. Negl., § 241. Any other rule invites carelessness in the conduct of banking business. Dan. Neg. Inst., § 342.

2. The question here involved must not be confounded with that as to the liability of a bank for the default of a notary in whose hands it has placed paper for presentation and protest. It has been decided in this State several times that a bank is discharged from further liability when it places paper in the hands of a notary if a proper one be selected. *Tiernan* v. *Commercial Bank,* 7 How. 648 ; *Agricultural Bank* v. *Commercial Bank,* 7 S. & M. 592; *Bowling* v. *Arthur,* 34 Miss. 41. This was also held in the case of *Britton* v. *Niccolls,* 104 U. S. 757. The rule in New York is that a bank is not liable for the conduct of a notary in the performance of those things which only a notary can do, but that it is liable for his acts where they are non-notarial—that is, such as any person, not a notary, could perform with equal effect, as the giving of notices of the non-acceptance or non-payment of an inland bill. But it is held in most States, including Mississippi, that a bank, having employed a competent notary, is not, in any case, liable for what he does. Shear. & Redf. Negl., § 243. The question being one of first impression in this State, and of great commercial importance, the court's attention is especially invited to the able and respectable authorities cited. In Grant on Banking 146, 173 *et seq.,* the doctrine here contended for is stated to be correct, and the author answers all argument based on the supposed hardship of the rule.

*Buck & Clark,* for the appellee.

1. On the question involved in this case, the great weight of au-. thority, especially of modern authority, is in favor of the appellee. No recent case, directly in point, can be produced contravening what may now be considered the settled doctrine outside of New York and Ohio. Nothing that could be said would add to the strength, or even the variety of the arguments, already advanced in the adjudged cases, in support of the majority opinion, unless it be this : The inherent difficulty in the beginning was in the inadequacy of proof as to what was the contract, and the consequent necessity of deducing the understanding of the parties as an inference from admitted facts not sufficient in themselves to show what the actual contract was. Now the very current of authority itself must be taken into account as a factor or circumstance contributing to the solution of this question. Parties who now do certain acts, which at the time, *Allen* v. *Merchants' Bank*, 22 Wend. 215, was decided in 1839, amounted to a contract susceptible of two constructions, must be presumed, in the absence of evidence to the contrary, as intending that they shall have that construction which has been generally adopted as the true one by the courts throughout the country. In the case just cited a judgment of the Supreme Court of New York, holding the forwarding bank not liable, was reversed in the Court of Appeals by a vote of fourteen against nine senators and Chancellor Walworth, who voted with the minority. The vice of the majority opinion lies in the assumption that there is no differ- ence in the understanding which the parties come to in the case of a deposit for collection at the place of business of the bank, and a deposit for collection at a distant point. Whether there is a differ- ence is not determinable by direct evidence, but by the application of reason and common sense to the admitted facts, and by evidence of common understanding and usage.

2. Substantially the same reason exists for holding a bank not bound in a case like this as, in the case of the selection of a notary public. In the latter case the bank is excused upon the ground that the notary is a public officer. If this is a sound reason it must be because, being clothed with this official capacity, the bank

is entitled to presume that he is competent to discharge the duties intrusted to him. This means no more than that the bank is not guilty of negligence in selecting him. Is not the imputation of negligence equally rebutted in reference to the selection of an agent or correspondent at a distant point, when it is shown that he was in good standing and that the bank acted in good faith and according to the best information obtainable in selecting him? Freeman, in his note to the case of *Allen* v. *Merchants' Bank*, 34 Am. Dec. 289, 315, says that, the grounds upon which liability is denied are much the same in substance in the two classes of cases. The subject is well treated in Morse on Banking 342 *et seq.*, where the English cases cited by opposing counsel are reviewed and the conclusion reached that the view of the majority of the courts is correct. In a recent Iowa case the rule of non-liability is held, upon a review of all the decisions. *Guelich* v. *National State Bank*, 41 Am. Rep. 110, and note. The same view is taken in Tennessee. *Bank of Louisville* v. *First National Bank*, 35 Am. Rep. 691 with note. In these opinions, those cited by opposing counsel and the case of *Britton* v. *Niccolls*, 104 U. S. 757, the court will find all the law upon the subject. In the case of *Guelich* v. *National State Bank, ubi supra*, the cases cited by opposing counsel on the analogous question of the liability of a collecting agency are commented on and distinguished. It will be observed that in the case of *Hoover* v. *Wise*, 91 U. S. 308 (a collection agency case), there was a strong dissent by three of the ablest judges on the bench when only seven were sitting ; and, as to the Pennsylvania cases, it appears from the citations in Morse that the Supreme Court of that State is as pronounced in its views against the liability of banks as in favor of that of collecting agencies. The cases are reconcilable in the view of the Supreme Court of Iowa " by the fact that the parties receiving the paper, being collecting agents only, become bound either by express or implied contracts to make the collections themselves." *Guelich* v. *National State Bank, ubi supra*. It is impossible that this can be the undertaking of a bank in a case like the present. Such an obligation would require a corps of agents and messengers the expense of maintaining which would immediately destroy the business.

COOPER, J., delivered the opinion of the court.

There is irreconcilable conflict between the courts on the question of the responsibility of a bank which receives for collection a claim on one at a place other than that at which it is situated, and sends it to an agent at the place of payment, for the default of such agent.   In England, New York, Ohio, and New Jersey it is held that the bank is liable for the default of its correspondent.   In Massachusetts, Maryland, Connecticut, Missouri, Illinois, Iowa, Tennessee, and Wisconsin, it is held that the bank is an agent for collecting the paper, by the employment of the customary agencies used by banks for that purpose, and that when it has transmitted it to a suitable agent with proper instructions, it is not responsible for the default of the agent.

In *Tiernan* v. *Commercial Bank,* 7 How. 648, the collecting bank had handed the bill to a notary who failed to protest it for non-payment, whereby the drawer was discharged.   In a suit brought by the owner against the bank, it was held that the bank, having placed the bill in the hands of the notary in time for presentment and protest, was not responsible for a loss occurring by reason of his default.   No distinction was attempted to be drawn by the court between the liability of the collecting bank, in those cases in which it employs a notary to collect, and those in which a private person is selected to perform that duty.   The decision was that a bank in undertaking to collect becomes the agent of the owner with authority to employ such sub-agents as are usual in the prosecution of the business it has undertaken, and is discharged from all liability if due care and prudence is used in the selection of the sub-agent, and because the notary was such sub-agent the bank was discharged from responsibility by his employment.   The authority of this case, upon the reasons given in it, has been twice followed by this court.   *Agricultural Bank* v. *Commercial Bank,* 7 S. & M. 592 ; *Bowling* v. *Arthur,* 34 Miss. 41.

These decisions we think are conclusive of the case now before us. If we should now say that these cases were rightly decided, not because of the reasons given by the court, but because of the official character of the notary, we would practically overrule them by

denying the correctness of the principle declared by them and which controlled their decision. Whether a bank in undertaking to collect becomes liable for the default of any of the agents it is required by the nature of its business to employ, where such agent is selected with due diligence and care, is, as we have seen, a question on which there is great conflict of decision, and we must assume that our predecessors on due deliberation preferred the rule of non-liability where the bank is without fault in the selection of the sub-agent.

*Judgment affirmed.*

CAMPBELL, C. J., delivered the following dissenting opinion.

I think the rule which prevails in England, and New York, New Jersey, and Ohio, and which is preferred by several eminent text writers, is the true one, and that a bank taking paper for collection is responsible for the default of its correspondent. I do not find fault with the cases cited from our own reports. They were where the claim was handed to a notary, and it was properly held that he was the agent, not of the bank, but of the owner of the paper, and that the bank was not responsible for the default of the notary. Where protest becomes necessary or proper the paper must be handed to a notary, and the owner of the claim knows that, and is conclusively presumed to have authorized the bank to commit the paper to a notary if it should become necessary to protest it, and the bank could not be held to be the surety of the notary any more than for a sheriff or other officer in executing the duties of his office, if suit became necessary on the claim and should be instituted. The language of the court in the cases cited seems broad enough to conduct to the conclusion a majority of the judges have reached in this case; but it should be interpreted and limited to the case before the court, and, this done, those cases are authority only for the proposition that a bank handing paper, which is to be protested, to a competent officer for that purpose, is not to be held answerable for his failure of duty. To this I agree, but I am unable to assent to the doctrine that a bank is not responsible for its own agents in the conduct of its regular business. It seems to be

settled that a collecting agency which takes a claim for collection at a distant point is responsible for the acts of its agent to whom the claim is sent for collection.    *Hoover* v. *Wise,* 91 U. S. 308; *Bradstreet* v. *Everson,* 72 Penn. St. 124; *Morgan* v. *Tener,* 83 Penn. St. 305.    I am not able to draw a distinction between a collection agency, by that name, and a bank, which is a collection agency, where it undertakes to collect claims for customers.    Dan. Neg. Inst., § 342; 34 Am. Dec. 316.