COMMERCIAL BANK OF BROOKHAVEN v. NORMA M. HARDY

ET AL.

[53 South. 395.]

1. PUBLIC FUNDS.  *Banks and banking.*   Code 1906, § 3485.   *Preferences. Assignments.*

The preference over other creditors given by statute (Code 1906, § 3485) to a tax collector or other officer having the custody of public funds to secure the same when deposited in a bank or other depository is assignable by the officer to one who upon failure of the bank advances to him the money necessary to make his official settlement.

2. SAME.  *Same.   Bank check.   When failure to present excusable.*

Where a bank check was drawn on a suspended bank for the purpose of assigning the drawer's deposit and neither party contemplated its presentation for payment according to the usual course of business and knew that it would not be paid if so presented, the drawee loses none of his rights by failure to so present it.

FROM the chancery court of Franklin county.

HON. JAMES STOWERS HICKS, Chancellor.

The Commercial Bank of Brookhaven, appellant, was complainant in the court below; Mrs. Hardy and others, appellees, were defendants there.   From a decree largely in favor of the defendants, granting complainant only a small part of the relief prayed, the complainant appealed to the supreme court.   The facts of the case, as stated by ANDERSON, J., were as follows:—

The appellant, the Commercial Bank of Brookhaven, a creditor of the Bank of Meadville, an insolvent banking institution being administered by a receiver of the chancery court, claims priority of payment over the general creditors of said bank for the sum of $4,736.10. The court below decreed against such preference, and from that decree the Commercial Bank of Brookhaven appeals to this court. The material facts necessary to be set out are as follows:

"On the 15th day of February, 1908, the Bank of Meadville, being insolvent, on a bill filed in the chancery court, was put into the hands of a receiver. On February 6, 1908, the officers in charge of the bank, recognizing its insolvency and inability to continue business, suspended payment. On that date J. P. Jones, tax collector of Franklin county, had on deposit in the bank, in his official capacity as such tax collector, public funds belonging to the state and county, amounting to $1,432.71, and C. W. Cain, treasurer of said county, had on deposit, in his official capacity, public funds belonging to the county, $3,309.39. On that date the tax collector and treasurer entered into the following contracts with the appellant, the Commercial Bank of Brookhaven:

Exhibit A.          "Brookhaven, Miss., Feby. 6th, 1908.

"Whereas, the Bank of Meadville has suspended payment to its depositors; and whereas, the undersigned, sheriff and tax collector of Franklin county, Miss., has on deposit in said bank to his credit as tax collector the sum of fourteen hundred and thirty-two dollars and seventy-one cents, and the further sum of forty-three dollars and fifty cents belonging to the county of Franklin; and whereas, the undersigned sheriff has in his hands as sheriff and commissioner the sum of four thousand six hundred and eighty-one dollars and thirty cents, being funds paid into court and coming into his hands by virtue of his office; and whereas, it is necessary, in order that he make his settle-

ments with the state and county treasurers, that the public moneys be immediately available, and that to meet the orders of the court the trust funds in his hands as sheriff and commissioner be also available: Now, in consideration of the advance to me as tax collector of Franklin county of said sum of $1,432.71, and as sheriff and commissioner of the sum of $4,681.30, by the Commercial Bank of Brookhaven, Miss., in cash, I hereby transfer and assign to said Commercial Bank all my right, title, and interest in said deposits, said bank to be subrogated to my rights therein as said county sheriff and tax collector and commissioner. I herewith deliver my check to said bank for said amounts. J. P. Jones, Shff. & Tax Col. & Com'r."

Exhibit B.    "Meadville, Miss.; Feby. 6th, 1908.

"No. ———. Bank of Meadville: Pay to Commercial Bank, Brookhaven, Miss., or bearer, $1,432.71, fourteen hundred thirty-two and 71/100 dollars. J. P. Jones, Tax Collector Franklin County."

Exhibit D.    "Brookhaven, Miss., Feb'y 6th, 1908.

"Whereas, the Bank of Meadville has suspended payment to its depositors; and whereas, the undersigned, treasurer of Franklin county, has on deposit in said bank the sum of thirty-three hundred and three dollars and thirty-nine cents belonging to the county of Franklin; and whereas, it is necessary, in order to meet the current expenses of the county, that the undersigned have said funds available: Now, in consideration of the advance to me, as county treasurer, of the said sum of $3,303.39 by the Commercial Bank of Brookhaven, Miss., in cash, I hereby transfer and assign to the Commercial Bank all of my right, title, and interest in said deposit, said bank to be subrogated to my rights therein as county treasurer of Franklin county. I herewith deliver my check to said bank for said amount. G. W. Cain, C. T., Franklin County."

Exhibit E.        "Meadville, Miss., Feb'y 6th, 1908.
"No. ———. Bank of Meadville: Pay to Commercial
Bank, or bearer, $3,303.39, thirty-three hundred and three and
39/100 dollars.   G. W. Cain, C. T."

On the execution and delivery of these contracts and checks
by the tax collector. and treasurer, the Commercial Bank of
Brookhaven gave each a certificate of deposit for the amount
due them, respectively, by the Bank of Meadville.   The checks
were never presented to the Bank of Meadville for payment.
The claim of $4,681.30 is eliminated from consideration, hav-
ing been withdrawn.   The Brookhaven Bank had no interest to
protect; and its purpose in accepting the assignments and
checks, and paying the amounts due these officers, was to make
customers of them, and at the same time have security against
the Bank of Meadville for the amount so paid.

*H. Cassedy* and *Green & Green,* for appellant.

Code 1906, § 3485.   In the *Fogg case,* 80 Miss. 7⁄50, the court
interpreted this statute, and it was held that the tax collector was
entitled to a preference over general creditors, without being able
to trace moneys which he had deposited in the bank into any spe-
cific trust fund and which had been intermingled with the other
money in a bank is a trust fund, and entitled to a preference.
It was also held that even though the tax collector had advanced
the money out of his own funds to settle with the state, county
and levee board, that he was entitled to enforce the trust, saying
page 756, "The fund is primarily preserved as a trust for the
benefit of the state, county and levee board, and a payment to
these several beneficiaries would subrogate the tax collector to
their respective equities.   A different result would defeat the
wisdom of the legislature, and cannot be entertained."

Thus the court holds that a trust can be enforced by the tax
collector as an individual in subrogation of the right of the

state and county in the trust fund. The principle of assign-ment and subrogation is thus fixed in this interpretation of this statute.

In *Metcalf v. Bank,* 89 Miss. 649, it was held that moneys deposited in any bank by any officer having the custody of pub-lic funds is a trust fund and not liable to the claims of the general creditors of the bank, and that such trust has priority over an assignment for the benefit of creditors, and the *Fogg case,* 80 Miss. 750, *supra,* was expressly confirmed.

In the present case the officer having this trust fund in the bank, assigned to the Commercial Bank the amount which it advanced to take up the deposit constituting this trust fund and took an assignment of the trust fund from said officers. This was a conventional subrogation as contradistinguished from subrogation by operation of law.

There are two kinds of subrogation: (1) By operation of law, and (2) by convention. 27 Am. & Eng. Ency. of Law (2d ed.), 202.

*Conventional subrogation—In General.* "In order that one having no interest to protect, who pays the debt of another, or advances money for that purpose, may be entitled to succeed to the rights and remedies of the creditor in respect to the debt so paid, there must be a convention or agreement to that effect. This convention or agreement may be made with either debtor or creditor. But when the creditor was not a party to the agreement, subrogation will not be enforced to his prejudice, or to the prejudice of innocent third parties, having equal equities." *Id.* 256, 257.

In the instant case the transaction was made with the assent of the Bank of Meadville and its directors.

It was contended that the Commercial Bank could not re-cover as assignee because it was a "volunteer."

A volunteer under a subrogation is defined:—"One who ad-

vances money to pay the debt of another in the absence of an agreement, express or implied, for subrogation, will not be entitled to succeed to the rights of the creditor so paid unless there is some obligation, interest or right, legal or equitable, on the part of the persons in respect to the matter concerning which the advance is made." *Id.* 255.

Where there is an agreement, express or implied, for subrogation, the party paying the debt cannot be treated as a volunteer. The subrogation is an assignment, and where the legal right is assigned, then the assignee takes whatever right the assignor had and the payment could not be a voluntary payment.

In *Crumlish v. Central Improvement Co.,* 45 Am. St. Rep. 872, it was held:

"A stranger who voluntarily pays the debt of another may take an assignment of it from the creditor and enforce the debt against the debtor, and, if, at the time the payment is made, the creditor agrees to assign him the debt, though no assignment in writing is made, the stranger will be regarded in equity as the equitable assignee of the debt, and the transaction is a purchase of the debt."

There is nothing inequitable in giving the public funds preference over general creditors, and if there were, the statute, Code 1906, § 3485, declares such preference, and the language of the statute interpreted in the *Fogg case, supra,* is conclusive of the proposition. Nor could it be inequitable to extend the privilege of the priority of payment to the person who advanced the money to the tax collector and county treasurer for the benefit of the state and county, and for the payment of the debts of the state and county, and who took an assignment or subrogation of the right of the tax collector and county treasurer's preference to reimburse itself.

If the fund is a trust fund as the statute declares, then its

character as a debt of the bank is fixed and any one dealing with it is entitled to the rights attendant upon this trust fund for its enforcement.    It would work irreparable hardships upon county treasurers and tax collectors who are required monthly to make settlements if they could not, in event of a failure of a bank, get some one to advance the money for these monthly or other payments upon an assignment of this trust fund, for thereby both the state and county would be hindered in the administration of its public finances and the officer made to bear the brunt of failure to make monthly settlements in case of a failure of a bank in which he had funds.

If the Bank of Meadville could not gainsay that this was a trust fund in the hands of an assignee, then its general creditors could not, because their right does not rise any higher than the right of the bank.    The Bank of Meadville could not change the character of this trust fund, and what it could not do, its creditors could not do.

Counsel cited *Dillon v. Cook,* 5 Smed. & M. 773, as authority for the proposition that this trust fund was not assignable. The statute as interpreted by the *Fogg case, supra,* declares it to be assignable, and available to the tax collector individually who advances the money to satisfy the state and county.    *Dillon v. Cook,* has no application and the statute there did not declare the fund to be a trust fund but merely created a personal right in the sheriff to have the execution which he had satisfied enforced for his benefit and the effort was to subrogate the sureties of the sheriff to this statutory personal right of the sheriff by operation of law by the mere payment of the public debt.    That case held that the statute did not authorize the sureties after the death of the sheriff to sue out the execution. It was a remedial statute, and the remedy provided by it was held to be not broad enough under the language of the statute to cover the sureties of the sheriff.

Counsel contended that there was no right of subrogation vested in the Commercial Bank, because they did not protest the checks to charge the drawers, Cain and Jones, and therefore the Commercial Bank had no right to the fund.

The checks were mere incidents to the express assignment and subrogation by Cain and Jones and hence there was no protest necessary in order to enforce the subrogation. Besides, the checks were signed by Cain and Jones, who also signed the subrogation, and they certainly could not assume the attitude that the debt was released because they had no notice of the non-payment of the check. In fact Cain and Jones had been before the directors of the Bank of Meadville and had demanded their money and failing to get their money, they demanded security and were advised by the attorney of the Bank of Meadville that it could not give them security. At that time the Bank of Meadville had only about $100 on hand which it paid out to an old widow and when Cain and Jones were threatening the Bank of Meadville and its officers with prosecution, Mr. Baggett, one of the directors of the Bank of Meadville approached Mr. Cain with the proposition that the Commercial Bank would advance Cain and Jones the money to make good these amounts if they would give checks with subrogation or assignment of the fund. The subrogation or assignment expressly recites that the bank had suspended payment. There could be no possible requirement for the protest of the check, for the protest could only, by operation of law, bind the drawer to liability, and the bank having failed and suspended payment, the drawer knew, as did all parties, that the bank could not pay the check and that it was not contemplated that it should be presented in the usual course of business, but that the check was merely a part of the assignment of the fund.

*J. McC. Martin,* for appellees.

The appellees contend:—

1st. That checks should have been presented, and if not paid

should have at once been protested for nonpayment. That failure to do so lost to the Commercial Bank any legal right growing out of said checks; and that, on the basis of said checks, it acquired no prior claim against the assets of the Bank of Meadville. *Parker v. Reddick,* 65 Miss. 242; *Baskerville v. Ib.* 780. *Morris v. Lake,* 9 Smed. & M. 525.

2nd. That all creditors of the Bank of Meadville, along with its depositors, as an elementary principle, stand on an equal footing as to the property of the bank; and that this equality of right can only be taken away by operation of law, or by some conventional right legally acquired.

3rd. That Code 1906, § 3485, confers a personal right on depositors of public money, under the circumstances and conditions therein named; and does not give to such persons a right to subrogate any third person to the statutory favor conferred on them. That in order to extend such favor or privilege from the officer to a third person, there must be an act of the legislature so extending to the officer the right to subrogate the third person, in the manner herein done. *Shields v. Thomas,* 71 Miss. 260, 14 South. 86, 87.

4th. That the Commercial Bank of Brookhaven was a volunteer, in the matter of J. P. Jones, tax collector, and C. W. Cain, treasurer; and that it had no interest to protect, or duty to perform which made it necessary for it to intermeddle. Besides, that it took over the J. P. Jones and C. W. Cain claims, for the purpose of acquiring their deposits with it of official funds, thereby seeking to benefit itself, knowing the crippled condition of the Bank of Meadville. 27 Am. & Eng. Ency. of Law (2d ed.), 203, par. 4; *Sperry v. Butler,* 75 Conn. 369; 27 Am. & Eng. Ency. of Law (2d ed.), 206; *Land Mortgage Co. v. Latham,* 88 Ind. 88; *McDonald v. Quick,* 149 Mo. 484.

5th. That not one dollar of the money deposited by either Jones or Cain, in their respective official characters or other-

wise ever went into the securities and property of the Bank of Meadville, making up the assets of said bank; but that every dollar which did do so was money of the depositors; that this fully appears from agreement made and filed herein as part of the record; and that said two officers did not so deposit public funds until about one or two weeks before the final closing of the said Bank of Meadville. Hence, that the equities are all with the depositors in maintenance of the elementary principle secondly above named.

It will readily be seen that section 3485, and no judicial construction of same, extend to either Jones or Cain to put the Commercial Bank in their place by substitution. Unless it clearly does, then, such right cannot be exercised by them. In the case of *Dillon v. Cook,* 5 Smed. & M. 773, the sheriff failed to make due return of an execution, and the plaintiff moved against him and his sureties, obtained judgment, and recovered from him the amount due thereon. The court says: "He is entitled under the statute to sue out a new execution on the original judgment, and collect the money for his own use; but the statute does not authorize the sureties of the sheriff who have paid money for him, he being dead, to pursue the same course." Further held: "The sureties were not authorized by the statute to sue out an execution on the judgment against Dillon and collect the same for their use."

The statute relied on in the above cited cases provided: "That if any sheriff shall fail to return an execution, the plaintiff may recover of the sheriff and his sureties, the amount due thereon with damages; and it contains a proviso that after such payment by the sheriff, the execution shall be vested in him for his own benefit." To allow them this privilege would be to incorporate a provision in the statute which it does not contain." *Ib.* 780. *Morris v. Lake,* 9 Smed. & M. 525.

"The vendor's lien for purchase money is founded on an

implied trust between the vendor and purchaser; and this court has distinctly held, that if the vendor makes the purchaser a deed, an assignee of the note for the purchase money has no lien upon the land for the payment of the note." *Skaggs v. Nelson,* 25 Miss. 94.

In the case of *Morris v. Lake, supra,* the court further says: "We are not inclined to extend the statute beyond its close construction."

ANDERSON, ·J., after stating the facts as above, delivered the opinion of the court.

It is contended on behalf of appellant, Commercial Bank of Brookhaven, that by virtue of the assignments to it by the tax collector and treasurer, above set out, and the payment by it, in consideration of such assignments, of the indebtedness due such officers by the Bank of Meadville, it is entitled to be subrogated to the preference given such tax collector and treasurer by Code 1906, § 3485. On the other hand, it is contended that the preference given by section 3485 is not assignable, and can only be enforced in favor of the officers to whom it is given, and that whatever rights the Commercial Bank of Brookhaven got by the assignments were lost, because the checks drawn by the tax collector and treasurer, in its favor, on the Bank of Meadville, were not presented for payment. In *Fogg v. Bank of Friar's Point,* 80 Miss. 750, 32 South. 285, this court held that, under Code 1892, § 3077, (Code 1906, § 3485), funds deposited in bank by a tax collector were trust funds, and, in case of an assignment by such bank for the benefit of creditors, the tax collector had a preference over other creditors to be paid in full, although he had settled with the state and county, and the preference sought to be enforced was for his individual benefit, and that, by virtue of his having made settlement out of his own funds, he was entitled to be subrogated, as an individual, to his

right as tax collector to the preference, and that he was required to settle monthly, and if by such settlement his right to the preference was destroyed the statute would be practically valueless, and that it was presumed that the bank as trustee did its duty by preserving the trust fund until all the other assets were exhausted, and "the trust moneys, so far as possible, are represented in the remaining assets of the bank." And in *Metcalf v. Bank,* 89 Miss. 649, 41 South. 377, it was held that under this statute public moneys deposited by a tax collector were entitled to priority of payment over general creditors, in case of an assignment by the bank for the benefit of creditors.

We find no fault with the principles announced in these cases. The statute in question was intended to provide for the security of the public funds. As against general creditors, it stamps a charge on *all* the assets of the bank for the prior payment of such trust funds; and it is not required, in order to enforce such preference, that the very funds, either in their original or transmuted form, be pointed out in the hands of the receiver. It is only necessary to show that the funds went into the bank. Tax collectors and treasurers are required to settle monthly, and if the preference given by this statute is not the subject of sale and assignment, in order to raise the necessary funds to make settlement, it is of little practical use. The officer has the legal title to the funds on deposit, as well as the right of priority of payment. What principle of law is violated by permitting him, in order to make such funds available, to sell and assign such title to another, substituting such other in his place? There is none. It is not necessary for such authority to be given by statute, for under the common law one may transfer whatever right he has, which is the subject of sale and transfer, whether acquired by virtue of statute or common law. In *Fogg v. Bank, supra,* the tax collector, who had replaced the public funds with his own, and was held to be entitled to enforce the preference given by

statute for his individual benefit, could have assigned his right to another, who would have been substituted to the same. The doctrine of subrogation by operation of law has no application to the facts here. The assignments and checks in question constituted a conventional subrogation. One paying the debt of another, though he has no interest to protect, may become subrogated to the rights and remedies of the creditor in respect to the debt so paid, by convention to that effect. 27 Am. & Eng. Ency. of Law (2d ed.), 256.

The appellant lost none of its rights by its failure to present the checks to the Bank of Meadville for payment, drawn by the tax collector and treasurer in its favor, for the amount of their deposits. The authorities relied on by counsel for appellees have no application to the facts. The assignments and checks together operated to transfer to appellant the deposits in the Bank of Meadville, with the right of priority of payment. It was not intended that the checks should be presented for payment according to the usual course of business, for the bank had suspended payment, and the parties knew they would not be honored.

The decree is reversed. Were it not for uncertainty in the record as to the exact amount of the two claims involved, a decree would be entered here for appellant. For this reason alone the cause is remanded.

*Reversed.*