W. H. POTTER ET AL. *v.* FIDELITY & DEPOSIT CO. OF MARYLAND.

[58 South. 713.]

1. PRIORITY OF STATE AS CREDITOR. *Statutes in derogation of sovereignty. Construction. Depositaries. Code* 1906, *Sec.* 3485. *Laws* 1908, *Ch.* 96. *Subrogation. Right of Surety.*

    In the absence of statutory or constitutional authority, the state, as sovereign, has no preferential rights in this state.

2. STATUTE IN DEROGATION OF SOVEREIGNTY. *Construction.*

    When the state's sovereignty is involved in any statute, statutes in derogation thereof are to be strictly construed in favor of the state, but the state sovereignty is not involved where the question is one of priority merely.

3. DEPOSITARIES. *Statutes in derogation of common right. Code* 1906, *Sec.* 3485.

    Code 1906, Sec. 3485 giving priority to the state over general creditors is a statute in derogation of common right, and such statutes are to be strictly construed as against parties, asserting claims by virtue of such statutes.

4. PRIORITY OF STATE AS CREDITOR. *Code* 1906, *Sec.* 3485. *Laws* 1908, *Ch.* 96.

    Sec. 3485, Code of 1906, was not repealed or intended to be repealed by Ch. 96 of Laws of 1908. It still stands as security to the state for all deposits of its money made by any person, in case of the insolvency of the institution where the deposit is made in all cases where any deposit is not made by virtue of its authority under the depository law of 1908. But when the state itself disposes of its public funds as is required by its depository laws, the relation of debtor and creditor is established between the state and the depository, merely, and the state must make its money, in the event of the insolvency of the depository out of its securities, and failing in this must share the assets pro rata with the other creditors.

5. SAME.

    When funds are placed by the state in a depository as provided by Laws 1908, Ch. 96, they are not "trust funds" within any meaning or purpose provided for by Sec. 3485, Code of 1906.

6. SAME.

    Where a bank selected as a state depository afterwards became insolvent and went into the hands of a receiver and the surety of such bank paid to the state the money owed by the bank and afterwards sued the receiver of the bank, to establish a right of subrogation to the state's alleged right of priority over the general creditors, such surety had no right of subrogation to priority over general creditors because the state itself had no such right.

APPEAL from the chancery court of Hinds county.
HON. G. G. LYELL, Chancellor.

Suit by the Fidelity & Deposit Company of Maryland against W. H. Potter and another, receiver of the Mississippi Bank & Trust Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Green & Green* and *F. M. West* and *W. R. Harper* and *Willing & Davis* and *Harris & Potter,* for appellant.

*Watkins & Watkins,* for appellee.

Counsel on both sides filed very able and extended briefs but too long for publication.

MAYES, C. J., delivered the opinion of the court.

This controversy arises under the state depository law, and the question involved is easily stated. In 1908 the legislature enacted a law providing for the establishment of state depositories. See Ch. 96, p. 77, Laws of 1908. Sec. 2, Ch. 96, of the Laws of 1908, was amended by Ch. 224, p. 223, of the Laws of 1910; but the amendment made has no bearing on the questions involved here. We shall not set out the legislative act in this opinion, since it will be easily accessible to the reader. This law creating state depositories was new in our jurisprudence at the time of the passage of the act, and by it a new method of dealing with public funds was initiated.

The record in this case discloses that the Mississippi Bank & Trust Company was selected as a state depository in accordance with every requirement of the law, and tendered as its security the surety bond of the Fidelity & Deposit Company in the sum of something over twenty thousand dollars. The surety company authorizing the use of its surety bond by the Mississippi Bank & Trust Company fulfilled all the requirements of the law as to its right to become surety to a selected depository. It may not be amiss to state at this juncture that no question is raised as to any irregularity in any of the procedure leading up to the selection and establishment of the Mississippi Bank & Trust Company as a state depository, nor is any point made by appellee as to the liability incurred by it to the state on the bond which it gave as surety for the deposits placed by the state in the Mississippi Bank & Trust Company. The whole question in this case is upon the right of the appellee to be subrogated to an alleged priority which it claims that the state has in the assets of the bank over the general creditors.

It appears that some time in July, 1911, the Mississippi Bank & Trust Company became insolvent while

it was acting as a depository and while appellee's surety bond was in full force, and, upon the application of creditors, was placed in the hands of a receiver. At the time this was done it was indebted to the state some twenty thousand dollars. The appellee, the Fidelity & Deposit Company, paid the full amount of the state's claim and filed a petition in the chancery court, seeking to be subrogated to an alleged priority which it claims the state has on the assets of the bank over all general creditors. The chancellor sustained the contention and allowed the claim as a preference claim, and from this judgment the receivers prosecute an appeal.

The contention is that the state's debt constituted a trust fund, and because the appellee company paid the state's claim it has the right to be subrogated to the state's right. In discussing this case we may state that, if the state has any priority over the general creditors, it must obtain it by virtue of some statute of the state or constitutional provision. In the absence of statutory or constitutional authority, the state, as sovereign, has no preferential rights in this state. This was settled as the law of this state when the case of *Shields* v. *Thomas,* 71 Miss. 260, 14 South. 84, 42 Am. St. Rep. 458, was decided. But if the court had not already set at rest this question, we would have no hesitancy in now declaring this to be the law. Some courts have held the reverse of this (see *Booth* v. *State of Georgia,* 131 Ga. 750, 63 S. E. 502, and note in 36 Cyc. p. 871), but we adopt the authorities which deny the state priority on any idea of sovereignty. For a discussion of this subject, see text and authorities cited thereto in 36 Cyc. 871.

Since the state has no sovereign right to priority, if it has any such right under the laws of this state, it must obtain that right under Sec. 3485 of the Code of 1906, or by virtue of the depository law of 1908, for these are the only two places in the law of the state where the

method of dealing with the public funds is regulated. We will discuss these statutes separately.

Sec. 3485 of the Code of 1906 is as follows: "All money deposited in bank, or with any other depository, by or for a tax collector, or other officer having the custody of public funds, state, county, municipal, or levee board, whether the same be deposited in the name of the officer as an individual or as any officer, or in the name of any other person, is *prima facie* public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository." If this section has any control over the law of this case, and if the state has any priority by virtue of this or any other statute of the state, then under the cases of *Fogg* v. *Bank,* 80 Miss. 750, 32 South. 285, *Metcalfe* v. *Bank,* 89 Miss. 649, 41 South 377, *Bank* v. *Hardy,* 97 Miss. 755, 53 South. 395, and *Green* v. *Cole,* 98 Miss. 67, 54 South. 65, the right of appellee to be subrogated to that priority is beyond question.

But the question in this case at this point is whether or not Sec. 3485 of the Code has any bearing on the question involved. In construing this statute, let us consider for a moment the rules of construction that are to be applied. When the state's sovereignty is involved in any statute, statutes in derogation thereof are to be strictly construed in favor of the state; that is to say, the state's sovereignty is to be broadened and upheld, and not narrowed or destroyed, when the courts are called upon to construe a statute infringing upon sovereign power. But we have held that the state's sovereignty is not involved where the question is one of priority merely. The state stands in the same position, in questions of this character, as does the humblest citizen, unless the Constitution or laws give it a priority over general creditors. If this be true, then this statute giving this priority to the state over general creditors is a statute in derogation of common right, and such statutes

are to be strictly construed as against parties assert-
ing claims by virtue of such statutes. They are to be so
construed as to bring within their scope only such rights
as are plainly within the terms. Such we conceive to
be the rule by which this statute is to be construed.

Sec. 3485 of the Code was enacted long before the de-
pository law of 1908, and was designed to protect the
state in a wholly different matter from anything dealt
with by the law of 1908. Let us for a moment compare
these two laws. Sec. 3485 of the Code does not give
authority to any person to make a deposit of public
funds. Chapter 96 of the Laws of 1908 has this as its
main purpose. If a deposit was made under section 3485,
the person making the deposit acted upon his own initi-
ative and on his own idea as to the solvency or insolvency
of the place of deposit. The sovereign was no party to
the making of the deposit and did not acquiesce in it.
Section 3485 merely relieved the person depositing the
funds from criminal liability at the utmost. It certainly
did not confer authority to make the deposit. Under
section 3485 no person had any authority to loan the
fund. No authority was given to demand security. The
person used his own discretion as to the safety of the
bank. He was not authorized to collect interest or con-
sent to the bank using the fund deposited as a part of its
assets. The fund had never been paid over to the sover-
eign authority, and it had not assumed control of it. It
was merely in transit to its owner, held by the agents
awaiting the time to pay it over. Under these circum-
stances, and to cover these cases, for the protection of
itself, the legislature enacted section 3485, providing
that these funds, when so deposited without the knowl-
edge or consent of the state, should be "trust funds,"
and not liable to be taken by general cerditors.

The law of 1908, in intent and purpose, is the reverse
of Sec. 3485 of the Code in every particular, and intended
to cover a different state of affairs. It is complete in

itself, and furnishes its own measure of legal right. Both laws accomplish an important, but altogether different, purpose. Neither has any bearing on the other, and both may operate at the same time without any conflict. Section 3485 was not repealed, or intended to be repealed, by the laws of 1908. Section 3485 still stands as security to the state for all deposits of its money made by any person, in case of the insolvency of the institution where the deposit is made, in all cases where any deposit is not made by virtue of its authority as evidenced by the depository law of 1908. But when the state itself disposes of its public funds as is required by the depository laws, the relation of debtor and creditor is established between the state and the depository merely, and the state must make its money, in the event of the insolvency of the depository, out of its securities, and, failing in this, it must take its place in the line of general creditors and share the assets pro rata with such creditors. When the funds are placed by the state in the depository, they are not "trust funds" within any meaning or purpose provided for by Sec. 3485 of the Code. Every deposit made by every person with any bank is in a sense a "trust fund," and it is only in this sense that the deposits made by the state are such, and in this sense no priority is given to one depositor over another. The argument of counsel for appellee resolves itself into the proposition that, unless section 3485 covered this deposit, there was no other law that did. But, if we were wrong in this statement, the law is searched in vain in an attempt to find any other statute of the state that hints at any priority of the state as to the deposit of public funds.

Let us examine Ch. 96 of the Laws of 1908 for a moment. The act is new to the law and complete in itself. It nowhere declares that the funds deposited in accordance with its provisions shall be deemed "trust funds." The deposit is made by the sovereign power itself for

the purpose of gain, with the intent that the funds shall
be used by the depositories as any other general fund.
The act clearly intends that the fund deposited shall be-
come assets of the bank, and used by it, and commingled
with its other funds, just as would any sum of money
borrowed from any source. The act fixes the security
and provides for the careful selection of its depositories.
The manner of dealing with these public funds as author-
ized by the law of 1908 is antagonistic to every idea of
a trust fund.

We have examined this case and all authorities cited
with very great care. It would be profitless for us to
take up and discuss the various citations, for we think
that an analysis of them all will show that this opinion
is in accord with the general holding of all the courts
save one or two that assert priority in the state merely
because of sovereignty. Other laws of our own state
dealing with other public funds and directing the placing
of those funds in depositiories are called to our atten-
tion, but we cannot see any different light that is shed
by them on the questions in this case.

It follows from what we have said that appellee has
no right of subrogation, because no priority existed in
the state; and this cause must be reversed, and petition
dismissed.

*Reversed and dismissed.*
*Suggestion of error filed and overruled.*