PEARL RIVER COUNTY *et al. v.* MERCHANTS BANK & TRUST Co. *et al.*

(Division B. Jan. 8, 1934.)

[151 So. 756. No. 30936.]

Stevens & Heidelberg, of Hattiesburg, for appellants.

Green, Green & Jackson, of Jackson, amicus curiae.

Flowers, Brown & Hester, of Jackson, for appellee.

**W. W. Pierce,** Assistant Attorney-General, for appellees.

Argued orally by **Rowland W. Heidelberg,** for appellant, and by **Clyde Hester** and **W. W. Pierce,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellants, Pearl River county and Bank of Picayune, filed their original bill and later an amended bill in the chancery court of Hinds county against J. S. Love, superintendent of banks, Merchants' Bank & Trust Company, in liquidation, J. L. Berry, liquidator, and L. S. May, treasurer of the state, seeking preference payment out of the assets of the bank of eighteen thousand three hundred forty-eight dollars and forty-three cents, representing the proceeds of certain school warrants belonging to Pearl River county, which warrants the Merchants' Bank & Trust Company had collected, and had the proceeds in its custody at the time it ceased to do unrestricted banking business. The cause was heard on the original and amended bills and answers thereto and proofs, resulting in a decree denying appellants relief.

There is no real conflict in the evidence as to the facts. Counsel for the superintendent of banks concedes that the statement of facts contained in appellants' brief is substantially correct. An examination of the record reveals that to be true. Therefore, in stating the case we shall adhere rather closely to that statement of facts.

Pearl River county had two depositories—the Bank of Commerce and the Bank of Picayune. The former was the active depository while the latter was the inactive one. Under the orders of the board of supervisors appointing the two depositories, it was provided that forty per cent. of the funds of the county should be kept with the Bank of Commerce and sixty per cent. with the Bank of Picayune, and all warrants drawn on the county should be paid by the Bank of Commerce, and the debits and credits between the two banks should be kept so as to carry out that purpose.

On September 19, 1932, the chancery clerk of Pearl River county, in his capacity as auditor of the county, had in his custody requisitions on the state auditor for

certain common school warrants, and on that date delivered the requisitions to the Bank of Commerce at Poplarville. At the time of so doing, he issued his warrant to the Bank of Commerce authorizing the bank as county depository to receive into its custody the funds to be derived from the collection of the warrants. These requisitions called for the warrants here involved, and also other school warrants. The Bank of Commerce did not accept the requisitions as cash nor as deposits by the county, nor did it credit the county with any amount. It did not issue its receipt in triplicate, which it would have been required to do under the law if the delivery of the requisitions constituted a deposit in the bank as a depository. On the same day these requisitions were received, the Bank of Commerce sent them to the state auditor. The form used for the requisitions contained a receipt printed on the back. This was required to be signed by the depository before the state auditor would issue his warrants. When the requisitions were handled by mail, as these were, it was necessary for these receipts to be signed before the requisitions were sent to the state auditor. The receipt is in this language: "Receipt of Auditor's warrant for the above amount in full payment of the above claim is hereby acknowledged." The warrants were issued on September 21, 1933, and the receipts on the requisitions had been signed on September 19th. The warrants were promptly mailed to the Bank of Commerce; upon their receipt the Bank of Commerce did not accept them as money or funds belonging to the county. The county was not given credit therefor on the books of the bank. No receipts were issued for the warrants by the bank as county depository. At that time and for some time thereafter. the state was behind in the payment of its school obligations. No cash was available for the payment of these warrants. The Bank of Commerce accepted the warrants for collection only and for nearly a month used every reasonable means to collect

them. On the 14th day of October, 1932, having failed to collect the warrants, the Bank of Commerce sent them for collection to the Bank of Picayune, the other depository for Pearl River county. On the same day the Bank of Picayune acknowledged receipt of the warrants, and in its letter of acknowledgment expressly stated that they were received for collection and not for credit, and its books showed that fact.

The Bank of Picayune did not credit the Bank of Commerce with the warrants, nor did it credit the county with them, nor did the Bank of Commerce credit the county with them when it received them. The Bank of Picayune sent the warrants, together with other warrants of the county received from the Bank of Commerce, to the Merchants' Bank & Trust Company of Jackson for collection. In its letter of transmittal it advised the Merchants' Bank & Trust Company that the warrants were the property of Pearl River county and were being sent for collection only. After the warrants had been received by the Merchants' Bank & Trust Company, the Bank of Picayune was diligent in urging their collection. It wrote many letters to the Merchants' Bank & Trust Company, in some of which it was stated that Pearl River county was badly in need of the school funds to be derived from the collection of the warrants. On October 24, 1932, the Merchants' Bank & Trust Company collected one of the warrants (not one of the warrants here involved), the proceeds of which it thereupon credited to the Bank of Picayune, whereupon the latter credited the amount to the Bank of Commerce and advised the Bank of Commerce and the chancery clerk of Pearl River county of the collection. Thereupon the Bank of Commerce accepted the credit as cash and charged the Bank of Picayune therewith on its books, and as county depository credited Pearl River county with the amount and issued its depository receipt therefor. Another one of the warrants (not one of these here involved) was col-

lected by the Merchants' Bank & Trust Company in December, 1932, and likewise credited to the Bank of Picayune, whereupon the Bank of Picayune drew its draft on the Merchants' Bank & Trust Company payable to the Bank of Commerce, and sent the same to the Bank of Commerce, advising the chancery clerk of that fact and suggesting to the clerk that he issue to the Bank of Commerce as county depository the statutory receive warrant. Upon receipt of this draft the Bank of Commerce accepted it as cash, and as county depository credited Pearl River county therewith and issued the statutory receipts therefor.

The Merchants' Bank & Trust Company was a state depository, but as such had only qualified to receive approximately two hundred thirty-five thousand dollars of the state funds, for the reason that the amount of its security pledged for the funds was of the par value of only two hundred sixty-one thousand five hundred dollars. It carried on its books three state accounts, only two of which are necessary to be considered here. One account was the bond and interest account, in which, on February 28, 1933, the state had more than one million dollars; the other was the general fund account. Under the law, beginning January 1, 1933, it was necessary that all public funds of the state be impounded until there had accumulated enough to meet its bonds and interest coupons maturing prior to August 1, 1933. On February 28th there had accumulated in this general fund account with the Merchants' Bank & Trust Company, approximately nine hundred three thousand dollars. On that date there was transferred from the general fund account to the bond and interest account nine hundred thousand dollars of this balance, leaving in the general fund account only about three thousand dollars. After this took place, the state treasurer, who was then in New York City for the purpose of delivering one million five hundred thousand dollars of state bonds which had been

sold, made delivery thereof to the purchaser and obtained approximately that sum of money which he deposited in the Chase National Bank of New York to the credit of the Merchants' Bank & Trust Company, and caused the former to give the latter advice of that fact; thereby the assets of the Merchants' Bank & Trust Company were increased to that amount, belonging to the state. Under the law this was a trust fund, for which the state had a preference out of the assets of the Merchants' Bank & Trust Company, because the bank had put up no security therefor. On February 28th the Merchants' Bank & Trust Company credited the general fund account of the Among the warrants were the four common school warrants and obligations of the state sent to it for collection. Among the warrants were the four common school warrants of Pearl River county involved in this litigation. On the afternoon of that day, immediately after receipt of this one million five hundred thousand dollars of public funds, the state treasurer gave the Merchants' Bank & Trust Company his check drawn on that bank for the total amount of these various items held for collection. The amount of his check was three hundred thirty-nine thousand nine hundred twenty-six dollars and thirty-seven cents. On March 1, 1933, the last day the Merchants' Bank & Trust Company was open for unrestricted business, it charged the general fund account of the state with the amount of this check and at the same time entered on its books to the various banks and others who had sent these warrants for collection credits for the amounts. Among those receiving such credits was the Bank of Picayune for the aggregate amount of the four warrants here involved.

On the afternoon of March 1, 1933, it was determined by the officers of the Merchants' Bank & Trust Company that it would not open for unrestricted banking business on the next day and for some time thereafter. Some time during that night there was mailed by the Merchants'

Bank & Trust Company to the Bank of Picayune advice to the effect that these warrants had been collected and the Bank of Picayune credited with the proceeds thereof. This advice was not mailed until it had been determined that the Merchants' Bank & Trust Company would not open for unrestricted business the next day; it was not mailed in time to be received by the Bank of Picayune while the Merchants' Bank & Trust Company was open for unrestricted business. The evidence showed that the earliest time the advice could have been received by the Bank of Picayune was on the afternoon of March 2, 1933.

Shortly thereafter the state superintendent of banks took over the Merchants' Bank & Trust Company for liquidation, and it was declared insolvent by decree of the chancery court of Hinds county. The evidence showed without dispute that neither Pearl River county, nor either of its depositories, ever received in whole or in part the proceeds of these warrants, and furthermore that the collection thereof from the Merchants' Bank & Trust Company could not have been made after the 1st of March, 1933.

Section 2914, Code 1930, is in this language: "All money deposited in a bank, or with any depository, by or for a tax collector, or other officer having the custody of public funds, state, county, municipal, levee board, road districts, drainage districts or school districts, whether the same be deposited in the name of the officer, as an individual or as an officer, or in the name of any other person, is prima facie public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository. Whenever any corporation, doing a banking business, of whose property and banking business the banking examiner has taken possession, as provided by law, it shall be the duty of such banking examiner, or his agent in charge, out of the first money coming into his hands, to immediately pay to the tax collector, or other officer hav-

ing the custody of such funds, the full amount thereof, as far as possible; and, on failure so to do, the chancery court of the county where said corporation was doing business, or the chancellor thereof, in vacation, shall on ten days' notice, require the payment of all, or such part thereof as is on hand, until the full amount due is paid. Nothing herein contained shall in any manner vary or affect the liability of such officer or his bondsmen.''

The statute was intended to provide for the security of public funds as against general creditors; it makes all assets of the bank liable for the prior payment of such trust funds, and it is not required, in order to enforce such preference, that the trust funds either in their original or transmuted form be pointed out. It is only necessary to show that the funds went into the bank. Commercial Bank v. Hardy, 97 Miss. 755, 53 So. 395; Fogg v. Bank of Friar's Point, 80 Miss. 750, 32 So. 285; Metcalfe v. Bank, 89 Miss. 649, 41 So. 377; Green v. Cole, 98 Miss. 67, 54 So. 65; United States Fidelity & Guaranty Co. v. Bassfield, 148 Miss. 109, 114 So. 26.

As above stated, on February 28, 1933, the assets of the Merchants' Bank & Trust Company were increased by one million five hundred thousand dollars, belonging to the state. As a state depository the Merchants' Bank & Trust Company had no security pledged for this one million five hundred thousand dollars. Under the law, therefore, it was a trust fund for which the state would have been entitled to a preference out of the assets of the bank upon its liquidation. The question is whether the Merchants' Bank & Trust Company, after payment to it of these warrants by the state out of this fund, could rid itself of its trust relation as to the amount so paid by mere matter of book entries, made at a time when it knew that it was impossible for the Bank of Picayune to receive the actual cash proceeds of the warrants. By such payment and book entries was the state's right to a preference destroyed, and at the same time was Pearl

River county prevented from acquiring a preference? We think not. The proceeds of the warrants had been earmarked as trust funds from the time of their issuance until they were paid. The correspondence between the three banks concerned—the Bank of Commerce, the Bank of Picayune, and the Merchants' Bank & Trust Company—showed this in unmistakable terms. The warrants were handled for collection only, the proceeds to be credited to the county when the actual cash had been received by the Bank of Picayune.

In this state what is known as the Massachusetts rule obtains with regard to paper put in a bank for collection. That rule is that each bank receiving the paper in the process of collection acts as agent for the depositor. People's Gin Co. v. Canal Bank & Trust Co. (Miss.), 144 So. 858; Third National Bank of Louisville v. Vicksburg Bank, 61 Miss. 112, 48 Am. Rep. 78; Bowling v. Arthur, 34 Miss. 41; Agricultural Bank v. Commercial Bank, 15 Miss. (7 Smedes & M.) 592; Tiernan v. Commercial Bank, 8 Miss. (7 How.) 648, 40 Am. Dec. 83; Commercial Bank v. Hamer, 8 Miss. (7 How.) 448, 40 Am. Dec. 80. Applying that rule to this case means that the Bank of Commerce, the Bank of Picayune, and the Merchants' Bank & Trust Company all handled these warrants for collection as agents for Pearl River county, and when collection was made by the Merchants' Bank & Trust Company it held the funds in trust for Pearl River county, and the only way it could be discharged of that trust was either to pay the actual cash over to the Bank of Picayune, or furnish the Bank of Picayune an opportunity, in the ordinary course of banking business, to acquire possession of the actual cash. Neither was done. The funds were never in reach of the Bank of Picayune; when it received advice from the Merchants' Bank & Trust Company that the warrants had been paid and it credited with the proceeds, it was without any power whatever to get the money into its vaults for Pearl River county—the

closing of the Merchants' Bank & Trust Company for unrestricted business meant just that.

To hold that Pearl River county is not entitled to a preference out of the assets of the Merchants' Bank & Trust Company would mean this: That funds held by the bank in trust for the state on one day and in trust for Pearl River county the next day could be relieved of both of the trusts by a check from the state treasurer transferring the funds to the bank followed by mere book credit by the bank to the Bank of Picayune, with no opportunity whatever for the Bank of Picayune to receive the actual cash into its custody.

Dakin, Receiver, v. Bayly, Liquidator, 54 S. Ct. 113, 115, 78 L. Ed. —, is not directly in point but supports to some extent what is being decided in this case. The receiver of the First National Bank of St. Petersburg, Florida, sued the People's Bank of Clearwater on an account stated. The defense of the Clearwater bank was set-off which arose in this manner: Customers of the Clearwater bank drew checks and drafts on the St. Petersburg bank and other banks in St. Petersburg. These checks and drafts were forwarded by the Clearwater bank to the St. Petersburg bank for collection. The St. Petersburg bank collected the items drawn on it by charging the accounts of its depositors and those drawn on other local banks by settlement of balances with them. Four drafts were sent by the St. Petersburg bank to the Clearwater bank to cover the amount so collected. These drafts were drawn on the Chase National Bank of New York. Neither bank carried an account or deposit in the other, and for a long period each bank had been forwarding checks and drafts to the other for collection and remittal. The four drafts on the Chase National Bank were dishonored. The contention of the Clearwater bank was that the St. Petersburg bank owed it the amount of these dishonored drafts, which it sought to use as a defense to the suit—as set-off or counterclaim.

The Supreme Court held that the Clearwater bank could not maintain, the set-off for the lack of mutuality, that the liability of the St. Petersburg bank was not to the Clearwater bank but to the depositors of the drafts and checks of the latter bank, which had been collected by the St. Petersburg bank. The decision of the court was based largely on section 6834, Compiled General Laws of Florida, which statute adopts the Massachusetts rule above set out. In its opinion the court used the following language: ''Since, then, the Clearwater bank acted as the agent of depositors in forwarding checks to the St. Petersburg bank, the depositors have a right of action against the latter for any default in collection or remittance. . . . The St. Petersburg bank stands in the relation of agent to the individual depositors of the items and is liable to them for failure to remit cash or equivalent in satisfaction of the amounts collected. . . . What, then, was the situation as disclosed by the record, when the St. Petersburg bank closed its doors? That bank, as subagent for the Clearwater bank's depositors, had made collection and sent the drafts for the amount to the Clearwater bank. It is incorrect to say that the St. Petersburg bank paid the amounts collected by forwarding drafts to the Clearwater bank, or that the Clearwater bank upon receipt of the drafts was bound to accept them as payment and its depositors were likewise thereupon bound to treat the agency of the Clearwater bank and that of the St. Petersburg bank as ended and the relation of debtor and creditor as established between them and the Clearwater bank. Equally inaccurate is the assertion that receipt and retention of the drafts required the Clearwater bank, unless its depositors asserted ownership of them, at once to credit the depositors with the amount of the items represented by the drafts. The bank was not bound to assume the relation of debtor until, in the words of the statute, it had re-

ceived final payment, i. e., cash or its equivalent, and we should not presume that it did so.''

Planters' Mercantile Co. v. Armour Packing Co., 109 Miss. 470, 69 So. 293, 294, is relied on by counsel for Merchants' Bank & Trust Company as decisive of the question in favor of the bank. We disagree with counsel. The case, on the contrary, gives a good deal of support to the claim of Pearl River county. The court held, among other things in that case, that where a check was sent to a bank on which it was drawn, for collection, and such bank charged the amount thereof on its books to the drawer, the drawer was discharged from liability thereon, provided (generally but not always) he had sufficient funds then on deposit with the bank to pay the check, and *the bank itself was solvent*. The court used this language in that case: ''When a check is received for collection by the bank on which it is drawn, and the drawer then has sufficient money on deposit with it with which to pay the check, he will be discharged from further liability thereon, although the bank fails to pay the amount of the check to the person from whom it was received, notwithstanding the bank may be then insolvent, provided the bank was then open for business, *and it does not appear that in event the check had been presented at its counter by another collecting agent it would not have been paid*.'' (Italics ours.)

Reversed, and judgment here for appellants.