BOARD OF LEVEE COM'RS FOR YAZOO MISSISSIPPI DELTA *v.*
POWELL.

[69 South. 215.]

STATES. *Public funds. Insolvency of depository. Priority. Statutes.*
Under Code 1906, section 3485, providing that all money deposited
in a bank by an officer having the custody of public funds is
*prima facie* public money, and a trust fund, and not liable to
be taken by general creditors of the officer or of the depository,
and Laws 1908, chapter 97, requiring banks, before being en-
titled to any deposit of funds of a board of levee commis-
sioners, to deposit with the treasurer of such board bonds equiva-
lent to fifty per cent. of the estimated maximum amount to be
kept on deposit, and declaring that such additional security
should not be a waiver of any rights conferred by law upon the
commission in the matter of recovering public moneys or trust
funds from banks in 'which they might be deposited, such board,
upon the failure of a bank which had complied with the statute,
was entitled to priority of payment from its receiver.

APPEAL from the chancery court of Tunica county.
HON. M. E. DENTON, Chancellor.
On suggestion of error, sustained, decree of lower
court reversed, demurrer to bill overruled and appellee
granted thirty days to answer.
For former opinion see 68 So. 71.

*Gary & Rice,* for appellant.

We insist that the cases of *Potter* v. *Fidelity & De-
posit Company of Maryland,* 101 Miss. 823, and *Powell*
v. *Board of Supervisors of Tunica County,* 65 So. 499,
are not inconsistent with our contention. The Potter
case is apparently the chief reliance of counsel in sup-
port of their position.

In the Potter case, as pointed out by us in our original
brief, the court had an entirely different question before

it for construction. Were the terms of the two deposi-
tory laws the same, that is, the state depository law and
the levee board depository law, we should be forced to
concede, as we have conceded, on that condition, that we
were asking the court for relief which had already been
denied us under former decisions of this court. But, the
levee board depository law has never been before this
court for construction or interpretation and what has
been said by this court in the two cases cited by counsel
for appellee in construing the state and county deposi-
tory laws was said with reference to the particular pro-
visions of the statutes creating the relationships in-
volved in those cases, or, more strictly speaking, author-
izing the particular relationships involved therein. In
our view, the construction by the court of these two
wholly different legislative acts is not conclusive as to
the issues here involved except in so far as the court has
construed similar provisions of these acts. However, as
to the part of the depository act relied upon by us in the
case at bar, there is no similar provision in either the
state or the county depository law.

In support of our position that the court had in mind
the construction of the state depository law only in the
Potter case and only decided that case on its construc-
tion of that particular statute we quote from the opinion
of Chief Justice Mayes: "The Law of 1908, in intent
and purpose, is the reverse of section 3485 of the Code
in every particular, and intended to cover a different
state of affairs. It is complete in itself and furnishes
its own measure of legal rights. . . . Let us examine
chapter 96 of the Laws of 1908, for a moment. The act
is new to the law and complete in itself. It nowhere de-
clares that the funds deposited in accordance with its
terms shall be deemed 'trust funds.' The deposit is
made by the sovereign power itself for the purpose of
gain, with the intent that the funds shall be used by the
depository as any other general funds. . . . The

manner of dealing with these funds as authorized by the Law of 1908 is antagonistic to every idea of a trust fund."

On the other hand, we find that the depository law provided for the levee board by chapter 97 of the Laws of 1908, is not complete in itself and is not intended to furnish a complete scheme in itself for the security of the funds of the levee board but, by its express terms, the additional and potent savings clause was inserted and by direct terms the act refers back to and incorporates within the scheme of the legislature section 3485 of the Code of 1906. We again quote this clause as counsel have, in the main, declined to discuss its terms.

"It is further provided that the creating of this additional security and the acceptance of the collateral hereinbefore mentioned shall not be construed as waiving any rights, benefits or privileges conferred by law upon the commission in the matter of recovering public monies or trust funds from banks in which they may be deposited."

The act expressly declares that it is not complete in itself and that it does not furnish its own measure of legal right and expressly refers to the funds deposited as trust funds, and preserves their character as such trust funds.

Thus, we find all these features embraced in the act now before the court, and we find that it was upon the absence of these very features from the state depository act that the court based its holding in the Potter case. When the two acts are differentiated and distinguished we find the Potter case supports rather than refutes our argument.

Considering the act in the light of the legislative intent, it is evident that the purpose of the legislature was, First, to provide a method by which the funds of the levee board might be lawfully and safely let and be made revenue producing until such time as they might

be called into use by the levee board. Second, to throw every safeguard around these funds and insure the return of same to the board.

To accomplish this second purpose it provided the particular security to be required under the act and, in addition, through an abundance of caution, perhaps, added as an additional safeguard the provision that the condition of the funds should still remain trust funds under section 3485 of the Code and the levee board should still have the rights and preferences applicable to the funds of the levee board under said section as enjoyed by it at the time of the enactment of the depository law. The act did not specify this section of the law but this was the only right or benefit that the board enjoyed at that time superior to any other creditor and this section must have been in consideration when this reference was made.

To express the idea differently, the legislature would seemingly have intended and expressed by the terms of this act the purpose to permit the creation of depositories for the levee board with the express reservation contained in the act that the creation of such depositories and the taking of this additional security should not impair any rights the levee board had to recover its funds provided such rights existed before the enactment of the depository law. That it might take this additional security but could not relax or relinquish any security it enjoyed at the time of the passage of this act.

*Montgomery & Montgomery,* for appellee.

Counsel complains of the language of the majority of the court, quoted on the second page of the suggestion of error, as follows: ''Section 3485 was intended to protect funds which had gone out of the actual possession of the legal custodian and into a bank, not in the way provided by law, but in a manner which under the statute was unlawful.''

We insist that the opinion of the court on this point is clearly correct, as will appear by reference to the authorities cited in our original brief, wherein we have reviewed all of the cases, from the early case of *Shields* v. *Thomas,* 71 Miss. 260, to the case of *Powell* v. *Board of Supervisors of Tunica County,* 65 So. 499.

It will be noted that in the first named case, *Shields* v. *Thomas, supra,* the court held, in discussing the general principle, independent of the statute, which had not been then enacted, that as to the general assets of the Bank of Greenville, the tax collector was not entitled to relief upon the facts stated in the petition, because it was not shown that the funds deposited by the tax collector at that time formed a part of the assets in any form.

It was to provide a relief for the public and a protection for trust funds which were deposited in a bank that section 3485 of the Code of 1906 was enacted. The law did not, theretofore, authorize a tax collector to deposit his funds in a bank, he was required to keep them safely and account for and pay them over at the proper time to the proper officials. Therefore, we entirely agree with the court and think that the majority opinion is manifestly correct in the part above quoted.

This is not a case in which the taxpayers of the levee district in question can possibly lose any part of their money. The board of levee commissioners, acting under authority of the law, have loaned this money to the Bank of Tunica. In doing so, they took the securities from that bank which the law provided for, and which the petition in this case shows are ample, perfect and more than complete for all of the money on deposit in the bank by the levee board at the time of its failure. This is a petition, not to collect money from this bank as a preference claim which could not be collected any other way, but praying that the chancellor shall take over four thousand dollars of this levee board's own bonds

for the benefit of the receiver and that this receiver pay over to the levee board over seven thousand dollars of money on deposit which can be collected·by the levee board itself, first: By the sale of the four thousand dollars of bonds and then, by resorting to its indemnity bonds in the sum of nine thousand dollars, which are shown to be perfectly solvent, and force the sureties on those bonds, who are surety companies, doing business in Mississippi, to make the levee board whole in its entire deposit. In other words, this petition asks that the court require the receiver to take the money of the general depositors and general creditors of the bank and pay it out to the levee board and then take the levee board's own bonds of four thousand dollars in lieu of part thereof and, after disposing of them, either the surety companies will be released from their liability for the balance, or the receiver would have to sue the surety companies.

We challenge the counsel to produce any law which sustains any such contention.

True it is that the depository law provides that "the creation of this additional security and the acceptance of the collateral hereinbefore mentioned, shall not be construed as waiving any rights, benefits, or privileges conferred by law upon the commission in the matter of recovering public moneys or trust funds from banks in which they may be deposited," but we agree with the majority opinion of the court that there were no rights, benefits or privileges conferred by law upon the commission for funds so deposited, for the reason, as expressly decided both in the Potter case and in the Powell case, that section 3485 of the Code of 1905 was only operative to protect funds placed in a bank without authority of law, or funds placed in a bank in excess of the amount of the security taken.

The burden of the appellant's contention in their suggestion of error is that if the provision of the levee

board depository law above quoted is not applicable to a case of this kind, they cannot understand what it means or to what kind of a case it would be applicable, and the distinguished dissenting judge said in his opinion that no state of facts can be conjectured other than the facts of the present case to which the clause can be applied.

We submit that his honor has overlooked several propositions in this statement; first: This provision in the law would clearly be applicable if the levee board had not taken sufficient security to protect the amount of money which was actually deposited in the Bank of Tunica and would apply to the excess, and the learned justice, dissenting, concedes this proposition in the concluding part of his opinion, wherein he says: "What this law means is manifest to my mind. The law, after having named the securities to be taken, says after all these named securities are exhausted, if anything remains unpaid, a trust is imposed on the assets of the depository in favor of the levee board for the purpose of enabling the board to collect the balance due. It means this, if it means anything."

We have no criticism to make of this language of the learned dissenting justice, but conceding him to be entirely correct in this statement of the law, it is perfectly clear that it does not apply to the case at bar, because in this case, the petition shows that the securities have not been exhausted and nothing will remain unpaid or can remain unpaid after the levee board has exhausted its securities. That there would then be no "balance due," after exhausting the securities, to which balance to apply this provision of the levee board depository law.

There is another state of the case in which, as we argued in our original brief, this provision of the depository law might apply, to wit: If the levee board had accepted municipal bonds of a town, or any other than its own bonds, and they had lost their market value to the

extent that they could not be sold for a sufficient amount of money to protect the deposit, or if the levee board had accepted individual sureties, or suretyship of surety companies which had become insolvent after their acceptance and before the failure of the bank, then, this provision of the law might apply for the protection of the levee board, but surely it was not the intention of the legislature that when the bank had deposited fifty per cent. of the maximum deposit in the bonds of this levee board itself and had given security by indemnifying possible deposit, in surety bonds of surety companies who were and have continued to the present time to be absolutely solvent, that notwithstanding, the levee board has its own bonds in its hands for a large part of its deposit and perfectly solvent surety companies securing by surety bonds, the remainder of the deposit and more, that they can take out of the funds belonging to the creditors of the bank the whole amount of their deposit without attempting to resort to any of their securities.

We, therefore, submit that under the concluding paragraph of the dissenting opinion in this case, the decree of the chancery court must be affirmed.

Stevens, J., delivered the opinion of the court.

It is earnestly suggested that the court erred in its opinion affirming this cause. The case was decided by a divided bench, and the opinions of the different members of the court, with a full statement of the facts, will be found in 68 So. 71.

It is with some feeling of reluctance that we upset or withdraw a former opinion of the court, but the construction placed upon chapter 97, Laws 1908, by a majority of the court as now constituted impels a change of the majority opinion and the sustaining of the suggestion of error. The rights of the parties hereto are based on statute, and the conclusions to be reached are

controlled by construction of the statutes here presented for review. We here adopt the views expressed in the dissenting opinion, and hold that the funds of the levee board on deposit in the Bank of Tunica, and now involved in this proceeding, are trust funds and under the protection of section 3485, Code 1906, as construed by numerous decisions of this court. The cases fully construing section 3485 are fully cited by SMITH, C. J., in his concurring opinion heretofore rendered in this case.

It is conceded that any funds of the levee board deposited in a bank before the enactment of the depository law (chapter 97, Laws 1908) would have been trust funds and a preference claim. As said by REED, J., in *Powell v. Board of Supervisors of Tunica County*, 65 So. 499:

"It is beyond question in this state that, independent of the depository law, a county has a preference claim against all assets of the bank for public funds on deposit therein, and that such funds are trust funds for which this preference is given." *Fogg v. Bank*, 80 Miss. 750, 32 So. 285; *Metcalfe v. Bank*, 89 Miss. 649, 41 So. 377; *Green v. Cole*, 98 Miss. 67, 54 So. 65; *Potter v. Fidelity Deposit Co.*, 101 Miss. 823, 58 So. 713.

What is here said by Judge REED with reference to the funds of a county applies with equal force to the funds of the levee board. Under the ruling in *Green v. Cole, supra,* the levee commissioners would have a lien on any assets of the bank, including its real estate, in event there was not sufficient money of the banking institution to satisfy the preference claim. The question is then presented whether the enactment of the levee board depository law deprives the levee commissioners in this case of the protection afforded by section 3485 of the Code. The determination of the question hinges solely upon the proper construction of chapter 97, Laws 1908, providing for the deposit by the treasurer of the

board of commissioners in a bank or banks to be selected and designated in the manner provided by the act in question. The right of the state in its sovereign capacity to prescribe the conditions upon which a bank should become a depository for the levee funds is conceded. The legislature, in the exercise of this right, provides for the security to be demanded, even to the extent of providing that "the stockholders of all banks qualifying as depositories under this act are hereby made liable for any loss sustained," and then expressly provides:

"That the creating of this additional security and the acceptance of the collateral hereinbefore mentioned shall not be construed as waiving any rights, benefits or privileges conferred by law upon the commission in the matter of recovering public moneys or trust funds from banks in which they may be deposited."

The language here employed by the legislature must be construed in the light of the adjudications of this court in reference to the older statute (section 3485), which alone at that time measured the right of the levee board to recover "public moneys or trust funds from banks in which they may be deposited." The lawmakers then knew that the levee board had a preference claim for any of its funds deposited by its treasurer in any bank or banks. Its purpose in enacting chapter 97, Laws 1908, was not only to provide a means whereby the board might derive some benefit from the use of the public funds, but also to provide for the safe-keeping of the levee funds. As said by Reed, J., in *Powell* v. *Board of Supervisors of Tunica County, supra*:

"The very purpose of the legislature, by the enactment of the law for the establishment of county depositories, was to provide for the safe-keeping of the county funds."

A different construction in the case just referred to was placed on the county depository law, but the stat-

ute in that case is also different from the statute now before us. The court in the *Powell* v. *Board of Supervisors Case* further says:

"We do not see in the present law (chapter 194 of the Acts of 1912) providing for the establishment of a county depository anything inconsistent with the provisions of section 3485 of the Code of 1906. . . . Such funds, when secured in such depository, do not need to be protected by section 3485."

The court in that case does proceed to hold, however, that:

"When the full amount for which the bank is qualified has been reached, then any other funds will be received into the bank, not in its capacity as a depository, but simply as a bank which is not a county depository receiving public funds. Such excess funds will come under the protection of section 3485. . . . They are trust funds, and are not liable to be taken by the creditors of the depository."

We do not take issue with the complete holding of this court, either in that case or in the case of *Potter* v. *Fidelity & Deposit Company,* 101 Miss. 823, 58 So. 713. The court in the Potter Case was construing still another and separate statute, chapter 96, Laws 1908, providing for a state depository, and it is significant that Mayes, C. J., remarks, in the course of his opinion, as follows:

"Let us examine chapter 96 of the Laws of 1908 for a moment. The act is new to the law and complete in itself. It nowhere declares that the funds deposited in accordance with its provisions shall be deemed 'trust funds.' "

The inference to be deduced from this language of Judge Mayes is clear. He meant clearly to state that, if the act there in review had enacted that the state funds deposited in accordance with its provisions should still be treated as trust funds within the meaning of

section 3485, then a different result might be reached. The draftsman of the levee board depository law certainly had in mind the very point now raised, viz., that the enactment of the law should not operate as a waiver on the part of the levee board of any of the rights, benefits, or privileges then provided by law for the recovery of such funds from insolvent banks in which they might be deposited. This, in fact, is the express language of the statute. It means this very thing. It cannot mean anything else. Section 3485, Code 1906, first appeared as section 3077, Code 1892, enacted for the first time by and with the adoption of the Code of 1892. The enactment of this statute recognized the growing practice of public officers to deposit public funds in banks, and the possible mischief and damage to the public interest by the failure of banks having public moneys on deposit. The lawmakers saw the hazard to which these funds were exposed, and meant to provide, and did expressly provide, that the public moneys belonging to the state, county, municipality, or levee board should, when deposited in any bank, be regarded and treated as "trust funds," not liable to be taken by the general creditors of the bank or by the creditors of the officers making the deposit. At that time the public officers charged with the duty of keeping public funds were held to be insurers of the safety of these funds. Notwithstanding this, the legislature was providing further and additional security.

It is now contended that section 3485 applies only when the funds in question are deposited in a manner which under the statute was unlawful; in other words, it is contended by counsel in this case that before the enactment of the present depository law it was unlawful for the treasurer of the levee board to deposit his funds in any bank, and that the old statute can in no wise apply now, because the legislature has provided a lawful place for depositing the levee funds. This, in

our judgment, is simply an effort to reason away the statute, and in the face of the statute. It has never been unlawful in Mississippi for a public officer to deposit public funds in a bank; no more so than it has been unlawful for him to deposit such funds under the floor of his dwelling house. On the contrary, the enactment of section 3485 recognized the growing custom of officers to make use of banking establishments; and the first pronouncement of this court in *Fogg* v. *Bank, supra,* does not characterize such a deposit as unlawful, but, on the contrary, the court, through Terral, J., says that:

"The bank received it (the deposit) as a trust fund *nolens volens,* and the principles of equity relating to trusts fully apply to it."

. And again:

"It is a trust fund from its nature and character, . . . as well as by the express declaration of section 3077."

The lawmakers, by section 979, Code 1906, in reference to county treasurers, by requiring in the alternative "a certified statement of deposit in a solvent bank in the state, verified by the oath of an officer thereof," recognized the common practice of depositing county funds in banks. In fact, the very enactment of all the depository laws in our state was induced by the growing custom of permitting banks to handle the public funds in such way as to swell their deposit accounts and to profit thereby. It is true that the selection and designation of a depository under the law in question followed by deposit of public funds therein creates the relationship of debtor and creditor. At the same time any such deposits are by law payable upon demand, and the failure to pay any lawful warrant not in excess of the deposit is a breach of the bond required of the depository, and authorizes the sale of the securities pledged; in other words, the depository must always be ready to return either the specific deposit or its equiva-

lent in money. Any bank proposing to qualify accepts the business with all of the restrictions and requirements of the law; it accepts the position *cum onere.*

The rights of the parties hereto being statutory, this case is clearly distinguished from the *Potter Case,* in 101 Miss. 823, 58 So. 713, *supra,* as well as the *Powell Case.* in 65 So. 499, *supra,* both of which were based upon statutes requiring and justifying a different construction from that placed upon the language of the statute now in question. The court, in effect, in each of those cases, held that the state and county, by selecting a depository under the acts in question, waived the benefits of section 3485, because neither of those acts declared that the funds would still be trust funds or protected by the statute then in existence. The draftsman of the levee depository law, however, had a vision of the construction the courts might place on the statutes, and incorporated in the instant statute an express reservation that all rights guaranteed the levee board by the law as then existing should not be waived. If it be said that the result of the present holding is to afford greater security for the levee funds than for the state and county funds, then we answer that the lawmakers gave us separate statutes for the state, county, and levee board, and with the wisdom of the law or the differences in the statute, as this court has time and again announced, we have nothing to do.

Let the decree of the lower court be reversed, the demurrer to the bill overruled, and appellee granted thirty days to answer after receipt of mandate by clerk of the court below.

*Reversed and overruled.*

SMITH, C. J., adheres to the views expressed by Judge REED and himself on the former hearing of this cause.